CITY OF NEW ORLEANS *v.* ELIJAH CANNON.

Defendant was sued for the city tax of 1853, and was cited under the 35th section of the Consolidation Act of 1852, which substitutes, in lieu of the petition and citation, the constructive service, by advertisement, of the tax-bill in the official newspaper of the city. *Held:* that such proceedings, in the absence of petition and citation, are not unconstitusional.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J.
*Labatt & Eustis*, for plaintiff. *Koonts*, for defendants and appellant.

VOORHIES, J. The plaintiff claims of the defendant tho sums of $418 50, the city tax for the year 1853, and $439 05, the consolidated loan tax, due the 1st of March, 1854.

The 35th section of an Act, entitled "an Act to consolidate the city of New Orleans, and provide for the government and administration of its affairs," approved the 23d of February, 1852, forms the basis of this action. (Session Acts of 1852, p. 52.)

The defendant excepted to tho plaintiff's right to maintain this action, on the ground that he had not been legally cited, no petition and citation having been issued and served upon him according to law.

It is deemed unnecessary, for the purpose of the decision in this case, to notice the other grounds of defence set up in the defendant's answer, inasmuch as the same grounds of defence, urged in the case of the present plaintiff against *Samuel Locke*, have lately been passed upon by us.

The only question, therefore, presented for our decision, is the the constitutionality of the summary proceedings prescribed by the 35th section of the Consolidation Act, to enforce the collection of the city taxes, which dispenses with the necessity of petition and citation, substituting in lieu thereof, constructive service by advertisement of the tax-bill in the official newspaper of the city. In support of his position, the defendant relies on our Constitution, which declares, that "no person shall be deprived of life, liberty or property, without due process of law," and on Article 7 of the Amendments of the Constitution of the United States, which provides, that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any courts of the United States."

We have been unable to discover in the proceedings under consideration any thing which militates against these provisions. Since the adoption of our first State Constitution, the constitutionality of the right to enforce the payment of the State and parish taxes, by proceedings equally as summary as those involved in this controversy, has never, for a moment, given rise to any doubt.

It has repeatedly been held, under our jurisprudence, that the assessment roll stood in lieu of and had the effect of a judgment and execution. In treating of the mode of bringing civil suits, of suits, and of parties litigant, tho Code of Practice, Articles 97, 98, provides: "Civil actions may be prosecuted, according to the nature of the case, by three kinds of proceedings, to wit: ordinary, executory, or summary. The proceedings are ordinary when citation takes place, and all the delays and forms of law are observed. They are summary when carried on with rapidity, and without the observance of the formalities required

in ordinary cases," etc. Hence, summary proceedings clearly fall within the term of "due process of law."

Are such proceedings, in the absence of petition and citation, unconstitutional? Surely not. But it is urged, that " no law can be constitutional which establishes a course of judicial proceedings, by which a party can be sued, the cause tried, and judgment given against the defendant, and he be in utter ignorance of the whole matter, until the Sheriff is at his door."

This assumption, we think, is clearly inapplicable to this case. The State assessment rolls formed the basis upon which the municipal taxes were levied. The law makes it the duty of the assessors to call upon each tax payer for a list of his property, to be given under oath. In the absence of any proof to the contrary, we are bound to presume that it was done in the present case. Hence the defendant must have been notified in the same manner as the other tax-payers.

Under the 37th section of the Consolidation Act, the debts of the three Municipalities, and the general sinking fund having been assumed by the city of New Orleans, it is made the duty of the Common Council to pass annually, in the month of January, an ordinance to raise the sum of $600,000, by a special tax on real estate and slaves, to be called the consolidated loan tax, the rate per cent. of which, in each Municipality, to be in proportion to its indebtedness. Surely, in view of this law, the defendant could not have been ignorant of the existence of his obligation to contribute, as other tax payers, to the payment of this tax.

The 35th section of the same Act provides, that "all city taxes, except levee dues, shall be payable only in the office of the Treasurer, from the 1st of May to the 1st of July of each year, and the said Treasurer shall, by notices in the public newspaper, pointed out by the Common Council, notify the tax-payers to appear at his office for the payment of their taxes." The ordinance appears to have been passed, and the notices published, in accordance with the requirements of the Act. Nothing in this appears to us to be either unconstitutional or oppressive.

In regard to the city taxes for the year 1853, we consider the plaintiff's claim equally well founded. The ordinance of the Common Council, approved the 20th of February, 1854, fixed the annual tax upon the real estate and slaves in the city, at ninety-six cents on every one hundred dollars of the assessed value thereof, according to the assessment rolls of the State Assessors.

The legality of the taxes levied under this ordinance, is resisted on the same grounds as those presented in the case of the *City* v. *Solomon, i. e.* that the formalities required by the 6th section of the Act of the 18th of March, 1850, had not been fulfilled. The decision in that case must be considered as decisive of this question.

It is, therefore, ordered, adjudged and decreed, that the judgment of the court below be affirmed, with costs.